1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

IN RE NCAA I-A WALK-ON FOOTBALL
PLAYERS LITIGATION

CASE NO. C04-1254C

ORDER

This matter comes before the Court on Plaintiffs' Motion for Leave To Amend Complaint (Dkt. No. 126), Defendant's Opposition (Dkt. No. 127), and Plaintiffs' Reply (Dkt. No. 132). Having considered the papers submitted by the parties and finding oral argument unnecessary, the Court DENIES Plaintiffs' motion, as follows.

I.    **BACKGROUND**

The facts of this case have been recited in prior orders of this Court. (*See* Orders (Dkt. Nos. 58, 112).) Plaintiffs are walk-on football players who played at NCAA Division I-A schools and who seek to have themselves designated as representatives of a class of similarly situated football players in this antitrust suit against Defendant the National Collegiate Athletic Association ("NCAA"). At issue in this lawsuit is NCAA Bylaw 15.5.5, which imposes annual limits on the number of football scholarships that a

ORDER – 1

member school may award.  For Division I-A Football, an institution is limited to 85 "counters"[1] per year.  Plaintiffs allege that they and the class they seek to represent would have received full grant-in-aid ("GIA")[2] scholarships but for the Bylaw 15.5.5 restriction imposed on the number of GIA awards given to football team roster[3] members.  Plaintiffs cast Bylaw 15.5.5 as an anticompetitive agreement between Division I-A members whose purpose is to contain the costs of operating their 117 "big time college football" programs.  Plaintiffs allege that the NCAA operates as a classic cartel, joining its competitor-members together to exert monopsony power that restricts competition for one of the major inputs (football players) to the relevant market (Division I-A college football).  Accordingly, Plaintiffs argue that the scholarship limit is an unlawful horizontal restraint of trade imposed by the NCAA and its coconspirators in violation of the Sherman Act, 15 U.S.C. §§ 1, 2, and that the NCAA and its members have conspired to monopolize the "big time college football market."  (Consol. Compl. (Dkt. No. 17).)  Plaintiffs allege that "walk-ons"[4] are injured by the cost-containment practice embodied by Bylaw 15.5.5 and that the subset of walk-ons that they seek to represent can prove this antitrust injury on a classwide basis.

---

[1]  A "counter" is "an individual who is receiving institutional financial aid that is countable against the aid limitations in a sport."  NCAA, 2003–04 NCAA DIVISION I MANUAL, Bylaw 15.02.3 (2003) [hereinafter NCAA MANUAL].

[2]  "Grants-in-aid" apply toward the "cost of attendance," which the NCAA defines as the "total cost of tuition and fees, room and board, books and supplies, transportation, and other expenses related to attendance at the institution."  NCAA MANUAL, Bylaw 15.02.2.  However, a "full grant-in-aid" is limited to "tuition and fees, room and board, and required course-related books."  *Id.* Bylaw 15.02.5.  Student athletes may not receive financial aid that exceeds the value of a full grant-in-aid.  *Id.* Bylaw 15.1.

[3]  The "roster," as used herein, refers to the list of "squad members" on the "first day of competition."  NCAA MANUAL, Bylaw 15.5.9.2.  The roster includes both scholarship and non-scholarship players.

[4]  As "walk-ons," Plaintiffs may have been recruited or unrecruited, but they have in common that they did not initially receive a GIA award.  (*See* Consol. Compl. 6.)  A walk-on may later be awarded a GIA, which then counts toward the school's 85-GIA limit.

ORDER – 2

1    This action commenced on May 19, 2004.  Plaintiffs seek injunctive relief invalidating

2  Bylaw 15.5.5 (or any similar GIA maximum), as well as money damages (to be trebled according to

3  statute), costs, and fees.  This Court denied the NCAA's Rule 12(c) motion for judgment on the

4  pleadings on September 14, 2005, finding (1) that Plaintiffs had sufficiently alleged that the scholarship

5  limit implicates the Sherman Act in a way that eligibility rules do not, (2) that Plaintiffs are entitled to the

6  opportunity to prove that there is a relevant market to which a rule-of-reason analysis can be applied, (3)

7  that Plaintiffs had sufficiently alleged injury to competition, and (4) that Plaintiffs should have the

8  opportunity to demonstrate that the NCAA has monopoly power over the alleged market.  (Order (Dkt.

9  No. 58.)  Plaintiffs first moved for class certification on January 18, 2005.  After protracted class

10  certification discovery and two rounds of briefing on the certification issue, the Court denied Plaintiffs'

11  motion for class certification made pursuant to Federal Rule of Civil Procedure 23(b)(3) on May 3, 2006,

12  finding that Plaintiffs failed to satisfy one of the four elements of Rule 23(a) and that they failed both

13  prongs of Rule 23(b)(3).  (Order (Dkt. No. 112).)  Plaintiffs then appealed the denial of class certification

14  to the Ninth Circuit, which denied interlocutory review on July 20, 2006.  (*See* Notice (Dkt. No. 118).)

15  On November 14, 2007, this Court lifted the stay previously imposed pending the Ninth Circuit's

16  decision.  (Order (Dkt. No. 121).)

17    Plaintiffs now have filed a motion to amend their complaint to add a single additional plaintiff,

18  Derrick Barclay, whose addition purportedly would allow Plaintiffs to file another motion for class

19  certification, this time pursuant to Rule 23(b)(2).  (Pls.' Mot. Ex. A (Proposed Amended Consolidated

20  Complaint) ¶ 15.)  Plaintiffs assert that, because all named Plaintiffs at this time have either graduated or

21  exhausted their NCAA Division I-A football eligibility, Mr. Barclay—as the only named plaintiff with

22  remaining years of eligibility—would provide Plaintiffs with standing to move for certification as an

23  injunctive class.  (Pls.' Mot. 2–3.)

24  //

25  //

26  ORDER – 3

1   **II.    ANALYSIS**

2          After the initial pleading amendment period provided by the Federal Rules, "a party may amend

3   the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be

4   freely given when justice so requires." FED. R. CIV. P. 15(a).  The United States Supreme Court has

5   delineated the factors that a district court should consider, as follows:

6          If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject
           of relief, he ought to be afforded an opportunity to test his claim on the merits.  In the
7          absence of any apparent or declared reason—such as undue delay, bad faith or dilatory
           motive on the part of the movant, repeated failure to cure deficiencies by amendments
8          previously allowed, undue prejudice to the opposing party by virtue of allowance of the
           amendment, futility of amendment, etc.—the leave sought should, as the rules require, be
9          "freely given."

10  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  Denial of leave to amend requires stated justification by the

11  district court.  *Id.*

12         The underlying purpose of Rule 15 is to "'facilitate decision on the merits rather than on the

13  pleadings or technicalities.'"  *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987)

14  (quoting *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981)).  This purpose must guide the Court

15  in determining whether to grant leave to amend.  *Id.*  While Rule 15 must be applied with "extreme

16  liberality," *id.* (citations omitted), there are limits to this command.  In accordance with *Foman*, "[f]our

17  factors are commonly used to determine the propriety of a motion for leave to amend.  These are: bad

18  faith, undue delay, prejudice to the opposing party, and futility of amendment." *DCD Programs*, 833

19  F.2d at 186.  Delay *alone* is insufficient to justify denying leave to amend.  *Id.*; *Howey v. United States*,

20  481 F.2d 1187, 1190–91 (9th Cir. 1973).  However, when combined with any of the other three factors,

21  delay may contribute to denial of leave to amend.  *See DCD Programs*, 833 F.2d at 186.  Of the four

22  factors, prejudice is the most important.  *Howey*, 481 F.2d at 1190.  Yet, futility alone may justify denial

23  of leave to amend.  *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2003).

24         Plaintiffs' proposed amendment here is for the sole purpose of posturing the complaint to support

25  another motion for class certification, which would request certification under Rule 23(b)(2) rather than

26  ORDER – 4

1  Rule 23(b)(3).  Accordingly, the Court will evaluate the proposed amendment's propriety in light of that

2  stated purpose.  As with class certification under Rule 23(b)(3), class certification under Rule 23(b)(2)

3  would require Plaintiffs to satisfy all four elements of Rule 23(a)—numerosity, commonality, typicality,

4  and adequate representation.  In addition, Plaintiffs would have to show that Defendant "has acted or

5  refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive

6  relief or corresponding declaratory relief with respect to the class as a whole."  FED. R. CIV. P. 23(b)(2).

7          As to the requirements of Rule 23(a), the Court finds that Plaintiffs' proposed addition of Mr.

8  Barclay would do nothing to remedy the previously identified failure to show adequacy of representation

9  under Rule 23(a)(4).  While damages conflicts may be relatively inconsequential to the propriety of

10 certifying an injunctive class, the Court has already noted that damages and causation are inseparable.

11 (May 3, 2006 Order 13.)  Moreover, the Court held that, while the existence of an antitrust violation is an

12 issue common to the entire proposed class, individualized determinations will predominate as to both

13 antitrust injury and damages.  (*Id.* at 15–22.)  Plaintiffs' proposed elimination of the damages component

14 from the class relief sought does nothing to address the requirement that antitrust injury—which is an

15 element of liability—be proven on a classwide basis.  (*Id.* at 17 (quoting *Bogosian v. Gulf Oil Corp.*, 561

16 F.2d 434, 454 (3d Cir. 1977); *Glictronix Corp. v. Am. Tel. & Tel. Co.*, 603 F. Supp. 552, 588 (D. N.J.

17 1984)).)  Accordingly, the proposed amendment would be futile because it cannot cure the Rule 23(a)(4)

18 deficiency previously identified by this Court.

19         Even if Plaintiffs could show adequate representation under Rule 23(a)(4) as to an injunctive

20 class, they would fail the substantive requirements of Rule 23(b)(2) in any event.  First, Plaintiffs'

21 proposed amended complaint, like the currently operative complaint, contains demands for both

22 injunctive relief and monetary damages.  While class certification under Rule 23(b)(2) is not limited to

23 actions requesting only injunctive or declaratory relief, *Probe v. State Teachers' Ret. Sys.*, 780 F.2d 776,

24 780 (9th Cir. 1986), class treatment is not proper where the "appropriate final relief relates exclusively or

25 predominantly to money damages," FED. R. CIV. P. 23(b)(2) advisory committee's note, *reprinted at* 39

26 ORDER – 5

F.R.D. 69, 102 (Amendments 1966).  Further, while the mere presence of treble damages demands under the Sherman Act may be insufficient to defeat class certification under Rule 23(b)(2), *e.g.*, *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 517 (S.D.N.Y 1996), this Court has already noted that, in the instant case, requested individualized money damages—to the tune of the cost of an entire college education for each Plaintiff—are substantial (May 3, 2006 Order 22).  Finally, as a practical matter, Plaintiffs' injunctive goal in this lawsuit—proving Bylaw 15.5.5 unlawful—may be achieved regardless of whether they proceed as representatives of a class.

For the foregoing reasons, the Court finds that Plaintiffs' proposed amendment would be futile. While this finding alone is sufficient to deny leave to amend, the Court also finds that the factors of undue delay and prejudice to Defendant also disfavor an amendment at this late stage.  As noted *supra*, this action was filed almost three years ago.  The class certification issue was initially brought before the Court over two years ago.  While Plaintiffs did demand injunctive relief in their original complaint, it was not until briefing the instant motion that Plaintiffs first suggested that class certification under Rule 23(b)(2) rather than Rule 23(b)(3) might be appropriate.  The class certification motion that this Court considered over the course of more than fifteen months contained no alternative request.  To allow one now would not only condone Plaintiffs' unexplained and undue delay, it would also prejudice Defendant.

## III.   CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Leave To Amend Complaint is DENIED.  The parties are ORDERED to submit a Joint Case Management Statement specifically addressing the parties' proposed schedule for merits discovery, expert discovery, dispositive motions, and trial.  Such Joint Case Management Statement shall be filed no later than April 11, 2007.

SO ORDERED this 26th day of March, 2007.

*John C. Coughenour*

John C. Coughenour
United States District Judge

ORDER – 6